IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CIVIL ACTION NO.: |
| Plaintiff, | ) |
| vs. | ) |
| $40,595.35 from BMO Bank, N.A., | ) |
| Defendant *in Rem.* | ) |

### UNITED STATES' COMPLAINT FOR FORFEITURE *IN REM*

The Plaintiff, United States of America, brings this complaint and alleges as follows, in accordance with Rule G(2) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions.

### NATURE OF THE ACTION

1. This is a civil action *in rem* to forfeit to the United States of America property consisting of $40,595.35 USD ("United States Dollars"), (hereinafter "Defendant Funds"), pursuant to 18 U.S.C. § 981(b), 18 U.S.C 981(a)(1)(A) and 18 U.S.C. § 981(a)(1)(C). The United States seeks forfeiture based upon a reasonable belief that the Government will be able to meet its burden of proof at trial to show that the Defendant Funds constitute, or are traceable to:

   a. property involved in wire fraud transactions or attempted wire fraud transactions in violation of 18 U.S.C. §§ 1343, 1349 and/or conspiracy to commit same;

1

    b.    property involved in money laundering transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and/or § 1956(a)(1)(B)(i) and/or 1957;

    c.    property involved in an illegal money transmitting business, in violation of 18 U.S.C. § 1960; and/or

    d.    proceeds of some other form of specified illegal activity set forth in 18 U.S.C. § 1956(c)(7) and;

    e.    proceeds of some other form of specified illegal activity set forth in 18 U.S.C. § 1956(h) and;

    f.    property involved in money transactions in criminally derived property or attempted money transactions, in violation of 18 U.S.C. § 1957; and

    g    property that is identical to property found in the same place or account as the property involved in the offenses outlined below that form the basis for the forfeiture and were seized within one year from the date of the offenses set forth below as set forth in 18 U.S.C. § 984 ("Civil forfeiture of fungible property").

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345, and over an action for forfeiture by virtue of 28 U.S.C. § 1355. This Court has *in rem* jurisdiction over the Defendant Funds pursuant to:

    a.    28 U.S.C. § 1355(b)(1)(A), because acts or omissions giving rise to the forfeiture occurred in the District of South Carolina; and

    b.    28 U.S.C. § 1355(b)(1)(B), because venue properly lies in this district pursuant to 28 U.S.C. § 1395.

## THE DEFENDANT *IN REM*

3. The Defendant Funds consist of $40,595.35 USD, seized by agents with the United States Secret Service ("USSS") during an investigation into a transnational criminal organization running a scheme to financially exploit the elderly by way of social engineering and romance scams. The funds were seized on August 4, 2025, from a BMO Bank N.A. account identified by account number 4028031 (the "Subject Account"), and under the name of 7141564 Canada Inc. The subject account is under the control of Anatoli Gutin and Irena Gutin.

4. In accordance with the provisions of 19 U.S.C. § 1606, the Defendant Funds have a total domestic value of approximately $40,595.35 USD.

## KNOWN POTENTIAL CLAIMANTS

5. The known individuals whose interests may be affected by this litigation are:

    a.    Anatoli Gutin, who may have an interest in the Defendant Funds because he was one of the named account holders of the account seized by USSS during this investigation.

    b.    Irena Gutin who may have an interest in the Defendant Funds because she was one of the named account holders of the account seized by USSS during this investigation.

## BASIS FOR FORFEITURE

6. Pursuant to the pleading requirements of Supplemental Rule G(2)(f), Plaintiff alleges that there is a factual basis to support a reasonable belief that the Government will be able to meet its burden of proof at trial to show that the Defendant Funds are subject to forfeiture to the United States, based in part upon the following:

    a.  Romance fraud occurs through social networking sites such as dating websites, social media sites such as Facebook or Instagram, or social gaming apps. An online persona will introduce themselves to a potential victim and will quickly develop a perceived romantic relationship. After a victim has endeared themselves to the online actor, the actor will convince the victim that they are in need of funds, often for work or medical expenses. The online actor will continue to operate the scam and introduce new scenarios where they need money as long as the victim continues to provide payment. Money is sent through a variety of methods such as wire transfer, check, cash through the mail, cryptocurrency, prepaid visa cards, gift cards, or in the form of valuable items such as phones or laptops. After the recipient has received the funds, the money is quickly withdrawn in cash, wired out of the account, or used to purchase other items.

    b.  7141564 Canada Inc. d/b/a AGI International Inc. (hereafter, AGI) is a corporation registered in the city of Dollard-des-Ormeaux in Quebec, Canada. AGI is registered under

business number 814650297 and was created on March 18, 2009. Information obtained through Canada's Business Registries show that AGI's registered address is 35 Rue Elderidge, Dollard-des-Ormeaux, QC H9A 2P5, Canada. Open-source research shows that this address is a single-family residence in Dollard-des-Ormeaux.

    c. Information and records obtained from BMO Bank NA show that AGI opened an account with BMO in 2019 under BMO Bank account# 4028031. The responsible parties and authorized signers on that account are Anatoli Gutin and Irena Gutin. Preliminary records from BMO Bank NA indicate that Anatoli Gutin ("Gutin") is the primary contact for the account. Furthermore, Gutin is listed as the company's director through Canada's Business Registries.

    d. The Bank of Montreal is a major multinational investment bank and financial services company headquartered in Montreal, Quebec, Canada. The Bank of Montreal conducts its U.S. banking operations through BMO Bank N.A., headquartered in Chicago, IL, and provides a wide range of banking services to customers across the United States. As a result, the Bank of Montreal, through BMO Bank, N.A., allows its Canadian account holders to open accounts here in the United States while maintaining their Canadian accounts.

    e. BMO Bank NA account 4028031 has received a total of $4,185,283 through wire transfers and automated clearing house (ACH) credits since October of 2024, with $1,050,916 having been confirmed as funds from victims of a romance scam. BMO Bank NA confirmed that AGI self-reported to be a grocery and produce wholesaler. Additional

5

transfers into the bank account owned by AGI appear to be for purposes that are unrelated to AGI's provided services. These additional transfers include a large volume of wire transfers into 4028031 from personal accounts that are layered in with wire transfers from businesses related to AGI's alleged services.

    f.   Victim M.E., a resident of Easley, South Carolina, began communicating with the scamming group around October of 2024 after finding and reaching out to the profile "Patrick Marsh" on eHarmony. M.E., in the months that followed, was coerced into wiring funds into to several accounts, to include BMO Bank, N.A. account 4028031. Regions Bank records show Victim M.E. wired $40,000 on 2/13/2025 from account ending *4341 to AGI's BMO Bank NA account 4028031. Victim M.E. completed an additional wire from the same Regions Bank account to AGI's BMO Bank NA account on 2/18/2025 in the amount of $60,000. Records and information from Citizen Bank and BMO Bank, N.A. showed that Victim M.E. conducted eight ACH transfers to BMO Bank, N.A. account 4028031 totaling $200,000. The total across all wires and ACH transfers from Victim M.E. to AGI was approximately $300,000.

    g.   Victim M.B.'s initial communication with the scamming group began on or about 01/07/2025, shortly after connecting with "Patrick Marsh" through eHarmony. M.B. was coerced into wiring funds from her personal checking accounts and investment accounts to AGI's BMO Bank, N.A. account 4028031 in the months that followed. A total of six wire transfers were observed from Victim M.B.'s accounts with Taylor Bank (ending *8306),

6

Fidelity (ending *8031), and Charles Schwab (ending *224), totaling $705,000. The wire transfers in question by date, sending account, and amount are as follows:

- 03/18/2025, Taylor Bank ending *8306 - $35,000
- 04/10/2025, Taylor Bank ending *8306 - $100,000
- 04/23/2025, Fidelity ending *8031 - $150,000
- 06/23/2025, Charles Schwab ending *224 - $220,000
- 06/27/2025, Charles Schwab ending *224 - $195,000
- 07/08/2025, Charles Schwab ending *224 - $5,000

h. Victim T.H. confirmed through remote interviews with local law enforcement that she was coerced into wiring funds to BMO Bank, N.A. account 4028031. Email correspondence between Victim T.H. and the scamming group confirmed that Victim T.H. believed that she was communicating with "Patrick Marsh", who she had met through eHarmony. Victim T.H., on 02/06/2025, wired $23,916 from her personal Wells Fargo checking account ending *3788 to BMO Bank, N.A. account 4028031. Victim T.H., on 03/17/2025, wired an additional $9,600 from her Wells Fargo checking account ending *3788 to BMO Bank, N.A. account 4028031. Victim T.H. further reported that she received a check from Victim M.E. in the mail in May 2025. Victim M.E. later confirmed writing the check out for $73,000 and mailing it to Victim T.H. Victim T.H. ultimately took that check to Truist Bank, who recommended that she not deposit it. Victim T.H. confirmed that she destroyed the check and ceased contact with the scamming group following this incident.

7

i.  Incoming and outgoing wires from BMO Bank, N.A. account 4028031 display a recurring theme of victim funds entering the account and, as soon as those funds are made available, being transferred to AGI's Bank of Montreal account. Information obtained from BMO Bank's Fraud Investigations indicate that after funds are sent to the Bank of Montreal account, they are subsequently wired overseas to business accounts in Russia, Belarus, Lithuania, Ireland, and Ghana. For example, Victim M.E. sent $100,000 via two wire transfers on 02/13/2025 and 02/18/2025 to AGI's BMO Bank, N.A. account 4028031. On 2/19/2025, 4028031 wired $120,000 to their Bank of Montreal account. On 5/9/2025, the same day that M.E.'s ACH transfers were made into AGI's BMO Bank, N.A. account 4028031, a wire transfer in the amount of $150,000 was initiated from 4028031 to AGI's Bank of Montreal account. Similar activity can be observed in M.B.'s $150,000 wire from her Fidelity account to BMO Bank, N.A. account 4028031. That wire was received by 4028031 on 04/23/2025 and wired out to AGI's Bank of Montreal account on the following day.

j.  Documents and records obtained from Yahoo, Inc. and Google, LLC on the suspect email accounts used to correspond with Victims M.E., M.B., and T.H., revealed extensive communication between the scamming group and the victims. The initial setup was similar across all victims. Each victim initiated communication with "Patrick Marsh" through eHarmony, an online dating website. That communication then quickly moved off eHarmony and into text messaging and email communication. Once this occurred, each victim received some variation of a very similar story – "Patrick Marsh" presents himself

to each victim as a contractor working with the Department of Homeland Security. As part of his work, "Patrick Marsh" is attempting to complete an objective such as updating an outdated software program but has run into an issue that only money can fix. "Patrick Marsh" then tells the victim that he has secured a portion of the funds necessary to move forward with the project/goal/etc. but needs money to complete the project. The underlying context for each of these conversations is that "Patrick Marsh" will be able to come back home once the project is finished.

    k.  In several instances, "Patrick Marsh" provided victims with a Promissory Note, a document stating that he needs a certain amount of money and promises to pay the victim back. Victims reported feeling that the Promissory Note gave them a level of comfort prior to sending any money and gave the transaction an air of legitimacy, as they believed the document to be a valid written contract. In some instances, these Promissory Notes were initiated from rebjlaw154@gmail.com and sent to one of the scamming group's email accounts, such as parsh2147@gmail.com or patmarshh@yahoo.com. The recipient scam email account would then forward the email from rebjlaw154@gmail.com containing the Promissory Note to the victim. In those cases, "Patrick Marsh" would preface the email with something about his attorney preparing the document for him, and rebjlaw154@gmail.com's email signature would be visible to the victim receiving the email. That email signature reads "Rebecca Johnson, Family Law and Contract, Anselmo, CA". One of the suspect scammer email accounts, parsh2147@gmail.com, was set as the

9

recovery email for rebjlaw154@gmail.com, indicating some level of control or dominion over the attorney account.

l. Additional records obtained from Yahoo, Inc. and Google, LLC showed that a substantial number of internet protocol (IP) addresses were recorded during routine account activity, many of which resolved to internet services or communications providers in Ghana. For example, on one suspect Google email account, parsh2147@gmail.com, 202 unique IP addresses were recorded during routine account activity. Of those, 111 resolved to internet services or communications providers in or around Accra, Ghana. Most of the remaining IP addresses in this example resolved to or were consistent with the use of virtual private networks or similar services used to obfuscate network traffic.

m. Email communication between victims and the scamming group included invoices for the work that Patrick Marsh was completing. The invoices in question were marked with AGI International Inc. as well as an address of 2525 N. Shadeland Ave, Indianapolis, Indiana. Victim M.B. was provided with the website www.agiintl.com as further proof that AGI was a legitimate company operating in the United States. Open-source information and records from the Indiana Secretary of State's website showed that AGI International Inc. at 2525 N Shadeland Ave in Indianapolis, IN provides specialized management consulting and supply chain management services. Further review of AGI International Inc. in Indianapolis, IN revealed multiple federal contracts, some of which are still active, with U.S. government agencies. Based on the above information, it appears that 7141564 Canada Inc. d/b/a AGI International Inc. is intentionally named and structured so as to

provide the appearance that the U.S. based AGI International Inc. and 7141564 Canada Inc. are the same company. Information obtained from BMO Bank, N.A. confirmed that account 4028031 is in no way affiliated with the U.S. based AGI International Inc.

7. The Defendant Funds are subject to forfeiture as the Defendant Funds constitute, or are traceable to:

    a. property involved in wire fraud transactions or attempted wire fraud transactions in violation of 18 U.S.C. §§ 1343, 1349 and/or conspiracy to commit same;

    b. property involved in money laundering transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and/or § 1956(a)(1)(B)(i) and/or 1957;

    c. property involved in an illegal money transmitting business, in violation of 18 U.S.C. § 1960; and/or

    d. proceeds of some other form of specified illegal activity set forth in 18 U.S.C. § 1956(c)(7) and;

    e. proceeds of some other form of specified illegal activity set forth in 18 U.S.C. § 1956(h) and;

    f. property involved in money transactions in criminally derived property or attempted money transactions, in violation of 18 U.S.C. § 1957; and

      g      property that is identical to property found in the same place or account as the property involved in the offenses outlined below that form the basis for the forfeiture and were seized within one year from the date of the offenses set forth below as set forth in 18 U.S.C. § 984 ("Civil forfeiture of fungible property").

## **CONCLUSION**

8. By reason of these premises, and pursuant to 18 U.S.C. § 981(f) and 21 U.S.C. § 881(h), whereby the Plaintiff's right, title and interest in and to the Defendant Funds relates back to the commission of the act giving rise to the forfeiture, the Defendant Funds have become and are forfeited to the United States of America, to be disposed of pursuant to Supplemental Rule G(7)(c) for Admiralty or Maritime Claims and Asset Forfeiture Actions, 18 U.S.C. § 981(d), 21 U.S.C. § 881(e), and other applicable laws.

9. WHEREFORE, Plaintiff prays that due process issue to enforce the forfeiture of the Defendant Funds, *in rem*; that a Warrant for the Arrest of the Defendant Funds be issued; that due Notice be given to all interested persons to appear, make claim, answer and show cause why the forfeiture should not be decreed; that the Defendant Funds be decreed condemned and forfeited to the United States of America for disposition according to law; and that Plaintiff have such other and further relief as the Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

BRYAN P. STIRLING
UNITED STATES ATTORNEY

By:  *s/Carrie Fisher Sherard*
Carrie Fisher Sherard #10134
Assistant United States Attorney
55 Beattie Place, Suite 700
Greenville, SC 29601
(864) 282-2100
Carrie.A.Fisher@usdoj.gov

December 31, 2025